UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION H-14-171-11 |
| | § | |
| CHERYL WALLER *on bond* | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the court is a motion for judgment of acquittal or, in the alternative, motion for new trial, which was timely filed by defendant Cheryl Waller's trial counsel on March 8, 2017.[1] Dkt. 610. The United States of America (the "Government") filed a response to the motion on March 24, 2017. Dkt. 621. In the interim, Waller had filed a motion to substitute attorney, which the court granted on April 5, 2017. Dkts. 619, 627. In the order granting the motion to substitute counsel, the court extended the deadline for briefing on post-trial motions until May 5, 2017. Dkt. 627. Waller's new counsel filed a motion for judgment of acquittal or in the alternative a new trial on May 4, 2017. Dkt. 650. The court construes the May 4 motion as an amended motion that replaces the motion filed by Waller's trial counsel.[2] After considering the motion, response, reply, and applicable law, the court is of the opinion that the motion should be DENIED.

### I. BACKGROUND

The superseding indictment alleges that from March 2005 through April 2012 Waller and her co-defendants, all of whom pled guilty prior to trial, conspired to defraud the United States in

---

[1] Waller's counsel also filed a "supplement" to the motion on March 13, 2017, which he incorrectly identified in the court CM/ECF system as another motion for judgment of acquittal. Dkt. 611.

[2] Any references to the "motion" from this point forward relate to the May 4 motion, not the March 8 motion.

violation of 18 U.S.C. § 371 to violate 42 U.S.C. § 1320a-7b(b)(1) & (b)(2) by soliciting and receiving kickbacks and bribes in return for referring individuals for the furnishing of an item or service paid for by Medicare, and for arranging for any good, item, or service paid for by Medicare (the "Conspiracy Count"). *Id.* at 10. It also alleges the Waller violated 42 U.S.C. § 1320a-7b(b)(2), which involves offering or paying kickbacks and bribes for the same (the "Kickback Count").

According to the superseding indictment, Waller owned a personal care home ("PCH") and was a patient advocate for Continuum Healthcare, LLC ("Continuum"), which owned and operated three Community Mental Health Centers in the Greater Houston Area, including Westbury Community Hospital ("Westbury"). Dkt. 136 at 6, 8. Westbury is a Partial Hospitalization Program ("PHP") under Medicare Part B. Medicare Part B covers PHPs connected with the treatment of mental illness. Eligible patients are those who are discharged from an inpatient hospital treatment program who use the PHP in lieu of continued inpatient treatment or patients who would require inpatient hospitalization without the PHP. *Id.* at 2.

The superseding indictment alleges that Waller received $118,000.00 from Continuum/Westbury in exchange for referring her clients for PHP services at Continuum/Westbury. *Id.* at 17. Waller's co-defendants, Edson and Parsons, allegedly billed Medicare approximately $4.7 million for PHP services allegedly needed by Waller's clients. *Id.* Edson and Parsons received $1.7 million from Medicare for these services. *Id.* at 18.

With regard to the Conspiracy Count, Waller's alleged overt act in furtherance of the conspiracy was to receive, on June 11, 2010, $2,044.00 from Edson and Parsons in exchange for referring Medicare beneficiaries to Continuum for PHP services. *Id.* at 21.

With regard to the Kickback Count, Waller, Edson, and Parsons allegedly paid or received remuneration in violation of 42 U.S.C. § 1320a-7b(b)(1) & (b)(2) and 18 U.S.C. § 2. *Id.* at 22. The amount alleged is $2,044.00 on June 11, 2010. *Id.* at 23.

Waller was tried before on a jury from February 27, 2017 through March 1, 2017. A unanimous jury found Waller guilty of Count One (the Conspiracy Count) and Count Nine (the Kickback Count) on March 1, 2017. Dkt. 607.

Waller moves for a new trial under Rule 33 of the Rules of Criminal Procedure, arguing that the court should vacate the judgment and grant a new trial because the verdict was against the interest of justice. Dkt. 650 at 5. She notes that she did not object to the jury instructions at trial, but asserts that the court should nevertheless find "plain error" because the instructions omitted two essential elements of the anti-kickback statute—specific intent and materiality. *Id.* at 6–7. Since both the Kickback Count and the Conspiracy Count depend on a violation of the anti-kickback statute, Waller asserts that the jury's verdict on both counts should be vacated. *Id.* at 7.

The Government argues that the motion should be denied because neither of the reasons asserted by Waller are grounds for granting a new trial after a guilty verdict. Dkt. 667. The Government points out that the Fifth Circuit Pattern Jury Charge does not require specific intent in the listed elements for conspiracy to defraud the United States, 18 U.S.C. § 371. *Id.* It also argues that the Fifth Circuit and the United States Supreme Court disagree with Waller's assertion that specific intent is required. *Id.* Additionally, it contends that materiality in not a required element to prove a violation of the anti-kickback statute. *Id.*

## II. LAW

Under Rule 33, "Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). If the motion is based on grounds other than newly discovered evidence, it must be brought within fourteen days after the verdict or finding of guilty. Fed. R. Crim. P. 33(b)(2). Generally, a court "should not grant a motion for new trial unless there would be a miscarriage of justice or the weight of evidence preponderates against the verdict." *United States v. Wall*, 389 F.3d 457, 466 (5th Cir. 2004). "A new trial is granted only upon demonstration of adverse effects or substantial rights of a defendant." *Id.* A "Rule 33 motion for a new trial 'goes to the fairness of the trial rather than to the question of guilt or innocence.'" *United States v. McRae*, 795 F.3d 471, 481 (5th Cir. 2015) (quoting *United States v. Williams*, 613 F.2d 573, 575 (5th Cir. 1980)).

## III. ANALYSIS

Waller moves for a judgement of acquittal or a new trial based on inadequate jury instructions. Dkt. 650. The court will first set forth the instructions that it provided to the jury on each count, and then it will consider whether these instructions comport with Fifth Circuit law in light of Waller's arguments.

### A. Instructions Given for the Conspiracy Count

Under the Conspiracy Count, the court charged the jury as follows:

> For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
> *First*: That the defendant and at least one other person made an agreement to pay or receive remuneration in return for referring Medicare patients or arranging for the furnishing of items or services paid for by Medicare;

4

> *Second*: That the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose; and
> *Third*: That one of the conspirators during the existence of the conspiracy knowingly committed at least one of the overt acts described in the indictment, in order to accomplish some object or purpose of the conspiracy.
>
> One may become a member of the conspiracy without knowing of all of the details of the unlawful scheme or the identities of all of the other alleged conspirators. So, if the defendant, with an understanding of the unlawful nature of a plan or scheme knowingly and intentionally joins in that plan or scheme on one occasion, that is sufficient to convict her of conspiracy, even though she had not participated before and even though she played only a minor part.
>
> The government need not prove that the alleged conspirators entered into any formal agreement, nor that they directly stated between themselves all the details of the scheme. Similarly, the government need not prove that all the details of the scheme alleged in the indictment were actually agreed upon or carried out. Nor must it prove that all of the persons alleged to have been members of the conspiracy were such, or that the alleged conspirators actually succeeded in accomplishing their unlawful objectives.
>
> Mere presence at the scene of an event, even with knowledge that a crime is being committed, or the mere fact that certain persons may be associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish proof of the existence of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of a conspiracy, does not thereby become a conspirator.

Dkt. 604.

**B.**     **Instructions Given for the Kickback Count**

Under the Kickback Count, the court charged the jury as follows:

> For you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following beyond a reasonable doubt:
> *First*: That the defendant solicited or received remuneration, including any kickback or bribe, directly or indirectly, overtly or covertly, in cash or in kind from any person;

> *Second*: That the remuneration was offered or paid to induce the defendant to refer an individual to a person for the furnishing or arranging of an item or service;
> *Third*: That the item or service was one for which payment may be made in whole or in part under a federal health care program; and
> *Fourth*: That the defendant acted knowingly and willfully.
>
> The word "offer" is defined as a representation expressing the ability and desire to pay a remuneration coupled with the intent to induce a desired action.
>
> The word "knowingly," as that term has been used from time to time in these instructions, means that the act was done voluntarily and intentionally, not because of mistake or accident.
>
> The government is not required to prove the defendant had actual knowledge of the Anti-Kickback Statute or specific intent to violate it. The government must prove that the defendant willfully committed an act that violated the Anti-Kickback Statute.

Dkt. 604.

## C. Specific Intent to Defraud

Waller argues that "there is no agreement as to the precise articulation of the scienter standard applicable to the anti-kickback statute." Dkt. 650 at 9. She asserts that "there is nothing inherently criminal about accepting something of value in exchange for a referral" and, as such, it is vital for courts to require specific intent. *Id.* Waller argues that the Fifth Circuit requires the Government to "at least show that the defendant had knowledge that the conduct in question was unlawful and was committed with the specific intent to do something the law forbids." Dkt. 650 at 10–11. She also contends that the Conspiracy Count has the same *mens rea* requirement as the underlying charge of violating the anti-kickback statute. Dkt. 650.

The Government argues that the Fifth Circuit has expressly rejected a requirement that a conspiracy charge requires the same level of *mens rea* as the underlying charge, and instead requires only a showing of knowledge of the unlawful conduct. Dkt. 667. Moreover, the Government argues that there is no heightened *mens rea* requirement for violations of the anti-kickback statute. *Id.*

6

1. **Conspiracy Count**

The court agrees with the Government. With regard to the Conspiracy Charge, in *United States v. Brooks*, the district court advised the jury, with regard to a conspiracy charge, that the "'government is not required to prove that a defendant knew the purpose of the agreement was in fact unlawful, that is, in violation of a statute, but the government must prove the defendant knew the purpose of the agreement, and the government must prove that the purpose was unlawful.'" *United States v. Brooks*, 681 F.3d 678, 699 (5th Cir. 2012) (quoting the district court's response to a jury question). The defendants argued that this was a misstatement of the *mens rea* required to prove conspiracy and conspiracy to commit wire fraud, the underlying count in *Brooks*. *Id.* The Fifth Circuit noted that the defendants seemed to argue that proving a conspiracy required proving that a defendant knew his or her conduct was unlawful, regardless of the *mens rea* of the underlying substantive offense. *Id.* It then pointed out that the Supreme Court requires "'proof of knowledge of the unlawful conduct,'" not "proof that the conspirators were aware of the criminality of their objective.'" *Id.* (quoting *Ingram v. United States*, 360 U.S. 672, 678, 79 S. Ct. 1314 (1959)).

Here, the court's instruction clearly required the jury to find that "the defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose." Dkt. 604. Thus, the jury was properly instructed with regard to the intent required for the Conspiracy Count.

**2. Kickback Count**

The anti-kickback statute states:

> Whoever knowingly and willfully solicits or receives any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in case or in kind—(A) in return for

> referring an individual or person for the furnishing or arranging for the furnishing of any items or service for which payment may be made in whole or in part under a Federal health care program . . . shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

42 U.S.C. § 1320a-7b(b)(1)(A). The court's instructions mirrored these elements. *See* Dkt. 604. The statute also specifically states that "a person need not have actual knowledge of this section or specific intent to commit a violation of this section." *Id.* § 1320a-7b(h).

The court's instructions provided a definition of "knowingly," using the definition that is contained in the Fifth Circuit's pattern jury charge. *Compare* Dkt. 604, *to* Pattern Jury Instructions (Criminal), District Judges Association, Fifth Circuit, No. 1.37 (2015). But it did not, as noted by Waller, define "willfully"—at least not in the section addressing the Kickback Charge. *See* Dkt. 604 (noting that "willfully" meant "intent to further the unlawful purpose" in the section discussing the Conspiracy Charge but not specifically addressing what "willfully" means in the section addressing the Kickback Charge).

Waller takes issue with the charge not including a definition of "willfully." Dkt. 669. She does not argue that the Government must prove that she had intent to violate the anti-kickback statute; she argues only that a showing of a knowing violation "is not enough to prove a violation of the Anti-Kickback statute." *Id.* She argues that the court "should have defined willfully to require that the Defendant acted with the specific intent to defraud." *Id.*

The Fifth Circuit has addressed the meaning of the instruction that "a person need not have actual knowledge of this section or specific intent to commit a violation of this section" contained in § 1320a-7b(h). *United States v. St. Junius*, 739 F.3d 193, 210 (5th Cir. 2013). In *United States*

8

*v. St. Junius*, which is similar to the instant case, the Fifth Circuit found that "the Government was only required to prove that [the defendant] willfully solicited or received money for referring Medicare patients . . . ." *Id.* In addition to challenging the court's willfulness instruction, the defendant in *St. Junius* took issue with the Government's argument to the jury that the jury "need only prove that [the defendant] knowingly received commission payments." *Id.* at 211. The defendant asserted that the willfulness element requires a showing that the defendant knew that receiving commissions for referring patients was illegal. *Id.* The Fifth Circuit specifically stated that this was an "erroneous" construction and that the prosecutor "correctly explained that the Government need only prove that [the defendant] knowingly and willfully received commissions in exchange for referrals." *Id.*

The court's instructions in this case—"The government is not required to prove the defendant had actual knowledge of the Anti-Kickback Statute or specific intent to violate it [and the] government must prove that the defendant willfully committed an act that violated the Anti-Kickback Statute"—mirrored the requirements outlined in *St. Junius*. Dkt. 604. The court clearly required a knowing and willful violation and finds that an actual definition of "willful" was unnecessary. The court finds no plain error. Waller's motion for a new trial on the grounds that the court did not sufficiently state in the *mens rea* requirements for the Conspiracy Charge and the Kickback Charge is DENIED.

**D.     Materiality**

Waller also argues that materiality is an essential element of both conspiracy to violate the anti-kickback statute and the anti-kickback statute itself. Dkt. 669. She contends that courts must infer that Congress meant to incorporate materiality into the statute when a statute uses the common-

9

law term "defraud." Dkt. 650 at 17. Since the False Claims Act is a fraud-based statute and the anti-kickback statute is part of the False Claims Act, she argues that a materiality component should be inferred—even though the anti-kickback statute does not use the term "defraud." *Id.* at 18–19. She asserts that the anti-kickback statute, "like the other fraud-based crimes, penalizes those who intend to deceive others through knowing misrepresentations or concealments of the truth." *Id.* at 19.

The Government argues that the anti-kickback statute does not require materiality. Dkt. 667. The Government acknowledges that the Supreme Court has inferred a materiality element in fraud statutes that involve a "scheme to defraud," but points out that neither the conspiracy charge not the anti-kickback statute involves a "scheme to defraud." *Id.*

In reply, Waller asserts that whether the statute requires a "scheme to defraud" is irrelevant because, regardless, the anti-kickback statute "criminalizes the fraudulent behavior of making medical decisions based on one's personal financial interests, as opposed to the best interests of the patients." Dkt. 669 at 4.

Waller relies primarily on *Neder v. United States*, 527 U.S. 1, 23, 119 S. Ct. 1827 (1999). In *Neder*, the defendant was charged with violating various criminal statutes relating to fraud. 527 U.S. at 4. The district court did not submit the issue of materiality to the jury with regard to charges involving tax fraud. *Id.* The U.S. Supreme Court held that "materiality is an element of the federal mail fraud, wire fraud, and bank fraud statutes under which [the *Neder* defendant] was also charged." *Id.* The charges in *Neder* included "devising and executing various schemes to defraud lenders in connection with . . . land acquisition and development loans." *Id.* at 6. The Court noted that the statutes did not define the phrase "scheme or artifice to defraud" and did not mention "materiality." *Id.* at 20. It instructed, however, that courts should not stop at the text of the statutes because

10

"'[w]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country, they are presumed to have been used in that sense.'" *Id.* at 22 (quoting *Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 59, 31 S. Ct. 502 (1911)). Because in common law fraud requires a knowing "misrepresentation or concealment of a *material* fact," and, in fact, "the common law could not have conceived of 'fraud' without proof of materiality," the Court found that it must "*presume* that Congress intended to incorporate materiality unless the statute otherwise dictates." *Id.* at 22–23 (citations and quotations omitted).

While the court agrees with Waller that the anti-kickback statute is related to fraud, the court finds that Congress' failure to include the term "defraud" or "fraud" in the statute precludes a presumption that Congress intended to incorporate materiality. The *Neder* court presumed a materiality element due to the common-law meaning of a term that Congress *included in the statute*. Here, there is no authority suggesting it is appropriate to make a double presumption that (1) Congress intended to include the term "defraud" and (2) as such it must have meant to require "materiality." Waller seeks to read more into the statute than it requires. Waller's motion for a new trial based on the court's failure to include a materiality element into the Conspiracy Charge and the Kickback Charge is DENIED.

### IV. Conclusion

Waller's motion for judgment of acquittal or in the alternative a new trial (Dkt. 650) is DENIED.

Signed at Houston, Texas on June 13, 2017.

_____
Gray H. Miller
United States District Judge